**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**GILDA W. CAVINESS**
Caviness Law Office, LLC
Rushville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GARY W. FERGUSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 73A05-1108-CR-434 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE SHELBY SUPERIOR COURT
The Honorable Jack A. Tandy, Judge
Cause No. 73D01-1011-FA-12

**May 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Gary Ferguson appeals his conviction for Class A felony dealing in a narcotic drug. We affirm.

**Issues**

Ferguson raises two issues, which we restate as:

I.      whether the evidence is sufficient to sustain his conviction; and

II.     whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

**Facts**

In September 2009, Ferguson owned and operated a barbershop in Shelbyville. Ferguson's brother-in-law, Darren Childers, had previously been a confidential informant. Ferguson asked Childers if he "knew anybody that wanted to buy any" drugs because "[h]e knew where to get some." Tr. p. 181. Childers was upset because his friend had died of a drug overdose and called Detective Mike Polston of the Shelbyville Police Department regarding Ferguson. Childers agreed to participate in a controlled buy from Ferguson.

On the morning of September 18, 2009, Ferguson called Mark Adkins and "wanted to know if [he] wanted to get rid of some pills," meaning Oxycodone. Id. at 273. Adkins responded that he did. Ferguson picked Adkins up and took him to the barbershop.

On that same day, Detective Polston searched Childers, outfitted him with a recording device, and gave him money to buy Oxycodone. However, Detective Polston

2

forgot to turn the recording device on. Detective Darren Chandler set up video surveillance of the barbershop and videotaped Childers entering and leaving the shop.

Ferguson and Adkins were at the shop when Childers arrived. Childers asked if he could still get "some of those Oxys," and Ferguson asked Adkins, "Can we still get them?" Id. at 184. Adkins responded, "Yes," and Ferguson took a pill bottle from a shelf behind a shampoo bottle and handed the bottle to Adkins. Adkins counted out ten pills, gave them to Childers, opened the bottle again, removed one pill, and said "Here's an extra one for you." Id. at 185. Ferguson took the bottle and put it back on the shelf.

Childers talked to Adkins for a minute and then left. At some point, Ferguson went outside with binoculars and looked around. Ferguson came back inside the shop and told Adkins, "I think we're had," and "[W]e're busted." Id. at 302. Ferguson and Adkins sold the Oxycodone to four people at the barbershop that day in addition to Childers. They split the money earned from selling the pills.

The State charged Ferguson with Class A felony dealing in a narcotic drug for knowingly or intentionally delivering Oxycodone to another "within 1,000 feet of a school property, a park, youth program center, and/or a family housing complex, and/or he did aid, cause, or induce Mark Adkins to do the same." Appellant's App. p. 10. At Ferguson's jury trial, Childers, Adkins, and Ferguson testified. Ferguson claimed that Childers and Adkins participated in the drug buy at his barbershop but that he was unaware of what they were doing. The jury found Ferguson guilty as charged. The trial court found the nature of the crime—the fact that a relatively small amount of drugs were involved and the fact that Childers was his brother-in-law and a confidential informant—

3

was a mitigator. The trial court noted that Ferguson had a criminal history and, although it was not "terrible," it was not a "positive" thing. Tr. p. 517. The trial court sentenced Ferguson to twenty-five years in the Department of Correction.

**Analysis**

*I. Sufficiency of the Evidence*

Ferguson argues that the evidence is insufficient to sustain his conviction for Class A felony dealing in a narcotic drug. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The offense is governed by Indiana Code Section 35-48-4-1(a), which provides that a person who knowingly or intentionally delivers a narcotic drug commits dealing in a narcotic drug. The offense is a Class A felony if the drug is delivered within 1,000 feet of a school property, public park, family housing complex, or youth program center. Ind. Code § 35-48-4-1(b)(3). Further, the State charged Ferguson, alternatively, as an accomplice. See I.C. § 35-41-2-4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ."). "Mere presence at the crime scene is insufficient proof to support a conviction, but presence at the scene coupled with other circumstances tending to show participation in

4

the crime may be sufficient to sustain a guilty verdict." Rohr v. State, 866 N.E.2d 242, 248-49 (Ind. 2007).

The State presented evidence that Ferguson asked Childers if he "knew anybody that wanted to buy any" drugs because "[h]e knew where to get some." Tr. p. 181. Ferguson also called Adkins and "wanted to know if [he] wanted to get rid of some pills," meaning Oxycodone. Id. at 273. Adkins responded that he did, and Ferguson picked Adkins up and took him to the barbershop. When Childers arrived, he asked if he could still get "some of those Oxys," and Ferguson asked Adkins, "Can we still get them?" Id. at 184. Adkins responded, "Yes," and Ferguson took a pill bottle from a shelf behind a shampoo bottle and handed the bottle to Adkins. Adkins then gave the pills to Childers. After Childers left, Ferguson went outside with binoculars and looked around. When he came back inside the shop, he told Adkins, "I think we're had," and "[W]e're busted." Tr. p. 302. That day, Ferguson and Adkins sold the Oxycodone to five people, and they split the money earned from selling the pills.

Ferguson argues that the evidence is insufficient because some of Childers and Adkins's testimony conflicted as to whether Adkins or Ferguson retrieved the bottle of Oxycodone, Adkins was testifying to receive a lenient plea bargain, and Detective Polston forgot to turn on the recording device. Ferguson's argument is merely a request that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. The credibility of Adkins and Childers was for the jury to determine. Further, although a recording of the buy clearly would have been helpful, the lack of a recording

5

is not determinative of the sufficiency of the evidence. It was the jury's duty to weigh the evidence. The evidence is sufficient to sustain Ferguson's conviction.

## II. Inappropriate Sentence

Ferguson argues that his twenty-five-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. Id. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a

6

portion of the sentence was suspended. <u>Davidson v. State</u>, 926 N.E.2d 1023, 1025 (Ind. 2010).

According to Ferguson, the trial court should have imposed a lesser sentence, and it should have suspended part of the sentence or ordered it served on community corrections. We begin by noting that Ferguson was sentenced for a Class A felony, and the statutory sentence for a Class A felony is between twenty and fifty years with an advisory sentence of thirty years. I.C. § 35-50-2-4. Thus, Ferguson received five years more than the minimum sentence. We also note that the trial court did not have discretion to suspend any part of Ferguson's sentence below the twenty-year minimum sentence because Ferguson's offense was a Class A felony and he had a prior unrelated felony conviction. I.C. § 35-50-2-2(b).

The nature of the offense is that Ferguson and Adkins sold Oxycodone to Ferguson's brother-in-law, Childers. The trial court found the nature of the crime—the fact that a relatively small amount of drugs were involved and the fact that Childers was his brother-in-law and a confidential informant—was a mitigator. We acknowledge that the nature of the offense is not egregious.

As for the character of the offender, Ferguson was charged with Class A misdemeanor battery in 1998, but that charge was resolved through pretrial diversion. Ferguson has a 2002 conviction for Class A misdemeanor operating a vehicle while intoxicated and 2007 convictions for Class D felony criminal recklessness and Class A misdemeanor battery. The trial court noted that Ferguson had a criminal history and, although it was not "terrible," it was not a "positive" thing. Tr. p. 517. Ferguson

7

contends that he had been married for nearly thirty years and that he had been employed for most of his life.

In sentencing Ferguson to five years above the minimum sentence and five years below the advisory sentence, the trial court took the circumstances of the case and the fact that Ferguson had a criminal history into consideration. We cannot say that the twenty-five-year sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

The evidence is sufficient to sustain Ferguson's conviction for Class A felony dealing in a narcotic drug, and his sentence is not inappropriate in light of the nature of the offense and the character of the offender. We affirm.

Affirmed.

MAY, J., concurs.

FRIEDLANDER, J., dissent with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

GARY W. FERGUSON )
     )
    Appellant-Defendant, )
     )
        vs. )      No. 73A05-1108-CR-434
     )
STATE OF INDIANA )
     )
    Appellee-Plaintiff. )
     )

**FRIEDLANDER, Judge, dissenting**

I agree that the evidence was sufficient to sustain Ferguson's conviction, but respectfully dissent from the decision to affirm his twenty-five-year sentence. I will not restate the facts of this occurrence, but merely register my observation that the Majority understates the matter in describing the nature of Ferguson's offense as "not egregious." *Slip op.* at 7. Among other things, I note the small quantity of drugs involved and the fact that they were sold to Ferguson's brother-in-law, who was working undercover at the time. This suggests to me that Ferguson was not involved in an extensive, ongoing drug enterprise, and does not pose a threat of doing so in the future.

His brief criminal history is comprised of two misdemeanor offenses and a class D felony. Although any criminal history at all is, as the trial court indicated, "not a positive

9

thing," *Transcript* at 517, neither should it be regarded as aggravating. Juxtaposed against this, Ferguson has been married for nearly thirty years and has been gainfully employed most of his life. On these facts, I believe anything in excess of the minimum sentence is inappropriate. I would revise the sentence downward and impose the minimum, i.e., twenty years.