**Ryan PRATT, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 49S00–0004–CR–265.

Supreme Court of Indiana.

March 27, 2001.

---

2. Ind.Code § 35–42–1–3

J. Richard Kiefer, Andrew J. Borland, Indianapolis, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

Ryan Pratt was convicted of murder, battery, and neglect of a dependent and sentenced to sixty years imprisonment. The victim was Pratt's eleven-month-old son, Dylan Pratt. In this direct appeal, he contends that there was insufficient evidence to support his convictions. We affirm the judgment of the trial court.

### Factual and Procedural Background

Dylan was born with amniotic band syndrome which resulted in severe deformities including an extra tissue appendage on his head, missing tissue from both eyelids, a cleft lip and gum, joined fingers, and the loss of his left leg below the thigh bone. In addition, he had difficulty breathing, difficulty keeping food down, and suffered from apnea, which is defined as the "transient cessation of respiration." Merriam Webster's Collegiate Dictionary 54 (10th ed.1993). Because of these problems, Dylan was in and out of the hospital suffering from a "failure to thrive." On each occasion, after being admitted to the hospital, Dylan gained weight and was then released into his parents' care.

On February 9, 1999, Dylan was again admitted to the hospital. Dylan gained weight and the doctors concluded he should be placed in the Parent Care Unit (PCU) in an effort to educate his parents in his care including medication and feeding. An apnea monitor measured Dylan's heart and respiratory rate. An alarm sounded if Dylan's heart or respiratory rate exceeded set parameters or if the leads attached to his body became loose or unattached. Pratt and Dylan's mother, Melody Brown, alternated watching Dylan while he was in the PCU. Pratt was alone with Dylan on the night of Saturday, February 20, 1999. The apnea monitor registered an alert twice that evening, before it was turned off until 7:00 a.m. Sunday morning.

On Sunday morning, Dr. Jill Mazurek examined Dylan and noted that he appeared to be sleeping and his heartbeat and lungs were normal. As Mazurek was

leaving the room, the alarm sounded, but was silenced when Pratt adjusted the leads. Mazurek heard the alarm a second time from the hall and sent in a nurse to check Dylan's condition. Katie Hirsch, the nurse, entered the room as Pratt was trying to silence the alarm. Hirsch thought Dylan looked very gray and immediately called for help. Two doctors entered the room, noticed Dylan's blue color, and started cardiopulmonary resuscitation.

Dylan was transferred to the Pediatric Intensive Care Unit where Melody noticed a "puffy bruise" on his head that had not been there when she left on Friday. She reported the bruise to the staff, who in turn alerted Dr. Melda Ackerman. Ackerman ordered a series of CT scans that showed that Dylan had a poor gray-white brain differentiation that could be a sign of brain swelling. This led the hospital to call Dr. Roberta Hibbard, the director of child protection programs at the Indiana University Medical Center, and an Indianapolis police officer. Hibbard discovered two cylindrical bruises approximately two and one half inches apart on Dylan's head, and a pattern of bruising on Dylan's back and buttocks. This bruising resulted in a laceration to Dylan's kidney. In Dylan's room, the police officer found a phone that matched the bruises on Dylan's head. The officer then interviewed Brown concerning Dylan's injuries. As Brown left the interview, the officer overhead her tell Pratt, "Don't worry, I didn't tell the Detective anything."

Another doctor examined the recordings of the apnea monitor for the night of February 20. In addition to discovering that it was turned off for most of the night, the doctor also believed that the readings from Sunday morning were consistent with a child with a herniated brain, suggesting that the blows causing the bruises occurred before the monitor was reactivated Sunday morning.

Dylan died on March 5, 1999, as a result of blunt force trauma to the head. Pratt was found guilty of murder, battery, and neglect of a dependent. The trial court merged the battery and murder convictions and sentenced Pratt to sixty years for the murder, to be served concurrently with three years for neglect of a dependant.

### Sufficiency of the Evidence

 Pratt contends that there was insufficient evidence to convict him of murder or battery.[1] When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Spurlock v. State*, 675 N.E.2d 312, 314 (Ind.1996). We look to the evidence and the reasonable inferences therefrom that support the verdict and will affirm a conviction if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.* Mere presence at the crime scene with the opportunity to commit a crime is not a sufficient basis on which to support a conviction. *Roop v. State*, 730 N.E.2d 1267, 1271 (Ind.2000); *Wilson v. State*, 455 N.E.2d 1120, 1122 (Ind.1983). However, presence at the scene in connection with other circumstances tending to show participation may be sufficient to sustain a conviction. *Roop*, 730 N.E.2d at 1271.

 When Brown left Dylan on Saturday evening, Dylan was not injured. According to Pratt's own account, he is the only person who stayed in the room with Dylan until Hirsch called the doctors. The undisputed medical evidence is that Dylan died from blows to' the head; the only issue is the source.[2]

According to Pratt, any number of nurses or doctors could have beaten Dylan. Evidence suggesting these possibilities was presented to and rejected by the jury.

---

1. Because the trial court merged the battery conviction into the murder conviction, here we address only the sufficiency of the evidence with regard to the murder conviction.

*Cutter v. State*, 725 N.E.2d 401, 407 n. 2 (Ind.2000).

2. Pratt also claims that there is insufficient evidence to establish that he "knowingly"

Pratt also claims that there was no eyewitness or direct testimony that he hit Dylan or even acted in a hostile manner towards his son. Although this is true, it is well established that "circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Bonds v. State*, 721 N.E.2d 1238, 1242 (Ind.1999).

■ The evidence established that when Brown left Dylan on Saturday night, he was not bruised. Pratt was in the room with Dylan until the nurse called for help, and the bruising was discovered shortly thereafter. The bruising pattern was consistent with the phone that was in the room with Pratt and Dylan.[3] During the night, while Pratt was with Dylan, the apnea monitor was turned off. When it was reactivated, a doctor testified that the reading was consistent with a child with a herniated brain. Although any one of these items alone does not establish that Pratt murdered Dylan, taken together with the reasonable inferences therefrom, there is sufficient evidence from which a reasonable jury could have found Pratt guilty. *Roop*, 730 N.E.2d at 1270–71.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.

---

killed Dylan. His argument under this section focuses on the lack of evidence that he committed the crime, not on whether Dylan's injuries were the result of "engag[ing]" in conduct with an awareness that the conduct has a high probability of resulting in death." *Jackson v. State*, 728 N.E.2d 147, 153 (Ind. 2000). Because he does not present a cogent argument in support of this contention, it is waived. Former Ind.Appellate Rule 8.3(A)(7) (now App.R. 46(A)(8).

**3.** Citing *Samek v. State*, 688 N.E.2d 1286, 1288 (Ind.Ct.App.1997), Pratt claims that the State failed to properly preserve the telephone for fingerprint and tissue analysis and that this "may violate a defendant's due process rights." In a situation such as this, where the evidence is merely potentially useful evidence, the defendant must show that the State's failure to preserve the evidence was committed in bad faith in order to prove a violation of his due process rights. *Id.* Pratt has not done so here.