ATTORNEY FOR APPELLANT
Joseph Leon Payne
Austin, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Kelly A. Miklos
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 40S00-0508-CR-381

AARON MICHAEL ROHR,                                    *Appellant (Defendant below),*

v.

STATE OF INDIANA,                                    *Appellee (Plaintiff below).*

Appeal from the Jennings Circuit Court, No. 40C01-0504-MR-93
The Honorable Jon W. Webster, Judge

**May 15, 2007**

**Dickson, Justice.**

The defendant, Aaron Michael Rohr, was convicted for the murder of five-year-old Samuel Moore and sentenced to life in prison without the possibility for parole. In this direct appeal,[1] the defendant seeks appellate relief as to the following issues: (1) sufficiency of evidence; (2) entitlement to change of venue due to pretrial publicity; (3) exclusion of witnesses; (4) exclusion of documentary evidence; (5) comments by the judge during trial; and (6) sentencing procedure. Finding substantial error in the exclusion of testimony of two defense witnesses, we reverse and remand for a new trial.

---

[1] Because this is a direct appeal from a sentence of life imprisonment without parole, the Indiana Supreme Court has exclusive jurisdiction pursuant to Indiana Appellate Rule 4(A)(1)(a).

Samuel Moore died April 26, 2005, four days after being taken to a hospital emergency room by the defendant and Donna Moore, Samuel's mother, with whom the defendant had been living for about two months. The State's evidence indicated that Samuel had sustained blunt force head trauma; a severe brain injury; and bruising on the back, front, and inside of his thighs, his left elbow, his groin area, his chin, his waist, both sides of his bottom, his back, and his penis and scrotum, which were also swollen. The evidence presented at trial demonstrated that both the defendant and Donna Moore had engaged in regular corporal punishment of Samuel. Donna had previously been investigated by the Department of Job and Family Services in Belmont County, Ohio, for physical harm to Samuel.

The State's final amended information charged the defendant with five counts: murder, class A felony battery, class B felony battery, aggravated battery, and neglect of a dependant, and the jury found the defendant guilty on each of the five counts and recommended a sentence of life imprisonment without the possibility of parole. The trial court entered a judgment convicting the defendant for murder and ordering a sentence of life without parole, and it entered convictions on the other counts but vacated them on grounds of double jeopardy.

**Exclusion of Witnesses**

Because we find the issue determinative, we first address the defendant's contention that his right to a fair trial was denied when the trial court prohibited him from calling and presenting the testimony of two witnesses, Roseanne Palmer and Melissa Scott. The State responds that the exclusion, as a ruling on discovery matters, should be affirmed because of the wide discretionary latitude given to trial judges, or alternatively, if the exclusion was error, it was harmless and thus not grounds for reversal.

On June 6, 2005, the trial court established a schedule that included: jury trial to begin August 1, 2005; all discovery and motions to be complete by June 30, 2005; and final witness and exhibit lists to be exchanged and filed by July 1, 2005. The scheduling order emphasized in boldface, all caps type: "ANY WITNESSES OR EXHIBITS NOT DISCLOSED BY THIS DATE, WILL ABSOLUTELY BE EXCLUDED AT TRIAL." Appellant's App'x. at 62. On the

2

discovery deadline date, June 30, one day before the July 1 deadline for filing witness and exhibit lists, the State filed its witness and exhibit lists along with a notice that it had on that date "discovered" to the defendant's counsel 45 items of discovery, which consisted of 853 pages plus 30 photographs, 2 video tapes, 3 CDs, and 1 audio tape. *Id*. at 95. The State certified that a copy of the notice was mailed to the defendant's attorney on June 30, 2005. On the same date, the State also filed a motion in limine seeking to prohibit the defense from "eliciting any evidence" regarding both "a welfare report" prepared in April 2002 by the "Belmont (Ohio) County Department of Job & Family Services," and "[a]ny incidents or allegations referred to" in the report. *Id.* at 98. The subsequently excluded witnesses, Melissa Scott and Roseanne Palmer, were not listed on the State's witness list, but their names appeared on pages 45, 47, and 48 of the Belmont County Department of Job and Family Services Report, one of the items the State furnished to the defense on June 30. *Id.* at 95, 428, 430, 431. The defendant's witness and exhibit list, filed on July 1, did not include the names of Roseanne Palmer and Melissa Scott, nor did it list the Belmont County report as a defense exhibit. But it did include "any person named in the discovery provided to the defendant" and any discovery or exhibit "provided by the State in its discovery." *Id*. at 100. On July 14, two weeks before the commencement of trial, the court denied the State's June 30 motion in limine "insofar as it seeks to prohibit the introduction of evidence relating to Donna Moore's alleged abuse of Samuel in the State of Ohio in 2002." *Id.* at 119.

The defendant first named Roseanne Palmer and Melissa Scott as defense witnesses in his Amended Witness and Exhibit List filed on July 28. *See id*. at 199-201. The next day, the State filed its motion to exclude the two witnesses, arguing that they "were not listed as witness for the defense until . . . approximately thirty (30) days past the discovery deadline date and four (4) days before the scheduled jury trial." *Id*. at 217. The State's request did not seek a continuance but sought only the exclusion of the witnesses' testimony. The State raised no other objection. Notwithstanding the defendant's objection to the motion citing the State's delay in providing the report that included the names of Roseanne Palmer and Melissa Scott until just one day before the final witness lists were due, and asserting that the defense could not determine its final defense strategy or witnesses until review of the State's voluminous information, the trial court, on the first day of trial, granted the State's motion to exclude these witnesses.

3

"Trial courts have the discretion to exclude a belatedly disclosed witness when there is evidence of bad faith on the part of counsel or a showing of substantial prejudice to the State." Williams v. State, 714 N.E.2d 644, 651 (Ind. 1999). Several specific factors have been deemed helpful in determining whether to exclude witness testimony: (1) the point in time when the parties first knew of the witness; (2) the importance of the witness's testimony; (3) the prejudice resulting to the opposing party; (4) the appropriateness of instead granting a continuance or some other remedy; and (5) whether the opposing party would be unduly surprised and prejudiced by the inclusion of the witness's testimony. Id. at 651 n.5; Cook v. State, 675 N.E.2d 687, 691 n.3 (Ind. 1996). We have emphasized, however, that "[t]he most extreme sanction of witness exclusion should not be employed unless the defendant's breach has been purposeful or intentional or unless substantial or irreparable prejudice would result to the State." Williams, 714 N.E.2d at 651 (quoting Wiseheart v. State, 491 N.E.2d 985, 991 (Ind. 1986)). Because of a defendant's right to compulsory process under the federal and state constitutions,[2] "there is a strong presumption to allow the testimony of even late-disclosed witnesses." Williams, 714 N.E.2d at 651.

The State urges that the exclusion of witnesses was proper because: (a) the trial court had previously warned counsel that witnesses or exhibits not disclosed by the court's deadline "will absolutely be excluded at trial," Appellant's App'x. at 62, and that "no continuances" would be granted "for any reason," id. at 4; (b) the defendant's addition of the witnesses' names to his list violated the court's deadline and was just four days before trial; (c) the defendant failed to provide any contact information to enable the State to locate, question, or depose the witnesses; and (d) the defendant had diligently asserted his right to a speedy trial. In its pre-trial motion in limine, the State had urged that the "minimal relevance" of the witnesses' testimony was "outweighed by its potential for prejudicial impact on the jury." Appellant's App'x. at 98. The trial court, however, denied the State's request. As to the State's subsequent motion to exclude the witnesses' testimony, the only ground asserted was that the witnesses' names were not listed as defense witness until well past the trial court discovery deadline and just four days before the scheduled jury trial. Id. at 217. Significantly, however, the State has made no assertion at trial or on appeal that the defense acted in bad faith. The witnesses' names originated from information provided by the State to the defense, and there is no evidence that the State had been unable

---

[2] See U.S. CONST. amend. VI; IND. CONST. art. 1, § 13.

4

to locate and speak with the witnesses either after their names were added to the defendant's witness list or during or before the one-month interval between the State's disclosure of the witnesses' names to the defense and the addition of their names to the defendant's list of witnesses. If the four days before trial were truly insufficient for reasonable investigation by the State, a short continuance would have been the appropriate remedy. Such a continuance, which would have been attributable, in part, to the defendant's belated addition of names to his list of witnesses, would not have operated to the defendant's disadvantage under Criminal Rule 4, which requires discharge for delay in criminal trials under prescribed circumstances.

The State knew of the challenged witnesses at some point before June 30th when it disclosed their names to the defense. Nothing in the record suggests that the defense had prior knowledge of them. The potential importance of the witnesses' testimony to the defense may be inferred from the State's efforts to exclude their testimony. In addition, the Belmont (Ohio) County Department of Job and Family Services report, on pages redacted from submission to the jury on hearsay grounds, included entries to the effect that Melissa Scott and Roseanna Palmer had witnessed Donna Moore's abusive treatment of Samuel since he was six months old, and that in 2002 they had observed Moore beat her son with a hard plastic wagon handle and threaten him, stating "do you want me to punch you, I'll knock you out." Appellant's App'x. at 428, 430. The redacted report pages also reflect that Moore admitted to the excluded witnesses that she flicks Sam's penis to make it "tougher when he gets older." *Id.* And two weeks before trial began, the trial court had rejected the State's June 30 motion in limine seeking to exclude any evidence relating to Donna Moore's alleged 2002 abuse of Samuel in Ohio. Because of the State's awareness of these witnesses and their importance and its opportunity to interview or depose them for more than a month before trial, we find that permitting them to testify would not have resulted in substantial or irreparable prejudice to the State. To the contrary, the exclusion of these witnesses resulted in substantial prejudice to the defense, as further described below. We further find that the defendant's delay in adding these witnesses to his witness list was neither purposeful nor intentional. The trial court should not have prevented the defense from calling Roseanne Palmer and Melissa Scott as witnesses.

An erroneous exclusion of evidence does not, however, require a reversal if "its probable

5

impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights." Williams, 714 N.E.2d at 652; Fleener v. State, 656 N.E.2d 1140, 1142 (Ind. 1995); *accord* Ind. Trial Rule 61.

The State argues that evidence to be provided by the excluded witnesses "was placed before the jury through Moore's own testimony and the redacted version of the investigation report made by the authorities in Ohio." Appellee's Br. at 20. Donna Moore's trial testimony included her admission that she had used corporal punishment, that she whipped Samuel both with her hand and a belt, that she had broken blood vessels in her hand while spanking him, and that she was investigated by Ohio authorities for hitting Samuel over the head with a wagon handle and for flicking him on his penis. In its response, the defense stresses that Donna Moore's testimony, while acknowledging the allegations, did not actually admit to the incidents for which she was being investigated in Ohio. In fact, Donna Moore's trial testimony includes her denial of hitting Samuel with the wagon handle and her denial of flipping his penis to "make him a man some day." Tr. at 734-35. She did admit, however, that immediately before taking Samuel to the hospital, just after the defendant and Moore discovered him having vomited in bed, she tried to get Samuel to respond by shaking him. *Id.* at 692, 741-42.

At trial, the State presented considerable evidence of Samuel's extensive injuries, most of which were not directly involved in causing his death. In addition to indications of a severe brain injury, the State's evidence showed injuries to Samuel's "thighs, his left elbow, his groin area, his chin, his waist, both sides of his bottom, his back, and his penis and scrotum." Appellee's Br. at 5. A pathologist testified that she observed approximately seventy-seven bruises on Samuel, and that the pattern of bruises was indicative of Samuel being beaten. Tr. 1011-14, 1018-20. The State elicited medical testimony that Samuel's injuries were indicative of "child abuse." *Id.* at 1019-1020. The cause of death was identified as blunt force trauma to the head. But when asked by the prosecutor if brain injuries like Samuel's could be caused by "a severe violent type shaking," the pathologist replied, "Absolutely." *Id.* at 865.

In light of the State's evidence, it was proper for the defense to seek to support its claim that Samuel's extensive injuries, purportedly the result of a pattern of child abuse, were caused

by Donna Moore, not the defendant. Stressing Moore's pervasive and continuous pattern of violent physical discipline of Samuel, the defense urged that it was Moore who had caused Samuel's injuries, and that such explanation should prevent the jury from convicting the defendant on the State's circumstantial evidence. *Id.* at 1183-93. The defendant had requested a final instruction reflecting this principle, and the final instructions accordingly included: "A conviction may be based solely on circumstantial evidence. Where proof of guilt is by circumstantial evidence only, it must be so conclusive and point so convincingly to the guilt of the accused that the evidence excludes every reasonable theory of innocence." Appellant's App'x. at 276, 303; Tr. at 1225; *see also* 2 Criminal Instructions Committee of the Indiana Judges Association, *Indiana Pattern Jury Instructions – Criminal*, Instruction No. 12.01 (3d ed. 2003).

Upon reviewing the record and in light of all the evidence, we are unable to conclude that the trial court's exclusion of Roseanne Palmer and Melissa Scott as defense witnesses "is sufficiently minor so as not to affect the defendant's substantial rights." Williams, 714 N.E.2d at 652; Fleener, 656 N.E.2d at 1142; *accord* Ind. Trial Rule 61. We decline the State's urging that we affirm on grounds of harmless error. We reverse the defendant's conviction.

## Sufficiency of Evidence

Having determined that a new trial is required due to trial error, we also address the issue of sufficiency of the evidence raised by the appellant.[3] This involves determining whether, based on the evidence presented at trial, sufficient evidence exists to support the conviction. Bowman v. State, 577 N.E.2d 569, 571 (Ind. 1991); *see also* Lockhart v. Nelson, 488 U.S. 33, 40-41, 109 S.Ct. 285, 291 102 L.Ed.2d 265, 274 (1988); Miller v. State, 575 N.E.2d 272, 276-77 (Ind. 1991); Williams v. State, 544 N.E.2d 161, 163 (Ind. 1989); Phillips v. State, 541 N.E.2d 925, 926 (Ind. 1989). If the proof of the defendant's guilt was insufficient in light of the evidence actually presented at his trial, he is not subject to retrial but is entitled to an acquittal.

The defendant contends there was no direct evidence that he caused the blunt force trauma to the victim's head leading to his death, and he argues that the circumstantial evidence

---

[3] Because a new trial is necessary, the defendant's other claims of trial court error are moot.

7

was insufficient in that it proved only that he was present in the house when the fatal injury occurred.

In a review of a sufficiency of the evidence claim, the Court does not reweigh the evidence, nor does it reevaluate the credibility of witnesses. Wright v. State, 828 N.E.2d 904, 905-06 (Ind. 2005). The Court views the evidence most favorable to the verdict and the reasonable inferences therefrom and will affirm the conviction if there is substantial evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id*. at 906; Warren v. State, 725 N.E.2d 828, 834 (Ind. 2000).

Considering the evidence favorable to the verdict, we observe that the medical evidence established that the victim died from a brain injury caused either by blunt force trauma or severe shaking. Evidence was presented that Donna Moore, Samuel's mother, left him with the defendant at about 11:00 a.m., that Samuel behaved normally when the mother departed, and that he spent the entire day alone with the defendant. Moore returned from work just before 10:00 p.m. After about two hours, the defendant checked on the victim, noticed that he had vomited in his bed, and reported to Moore what he had seen. The two then returned to the boy and attempted to ask him some questions. When Samuel did not respond, the defendant nudged him, causing him to fall off of the bed and bump his chin on a dresser. When it appeared that Samuel had lost consciousness, the defendant and Moore took Samuel to the hospital emergency room. With the type and severity of injury experienced by Samuel, unconsciousness usually occurs just minutes rather than days after the traumatic injury. The medical staff observed symptoms of a severe head injury and brain swelling and found extensive bruising on Samuel's body, which was then reported to police. While the staff was evaluating the boy, one hospital employee reported that she heard the defendant tell Moore that they did not need to mention "the smacking of the legs." Tr. at 393. A deputy sheriff reported that he overheard the defendant advise the mother that the police had driven by the house and that he "got rid of what [he] could, but not all." *Id*. 410. After the defendant was arrested, he stated that he and Moore shared responsibility for disciplining Samuel, including spanking with a belt, and that they had begun hitting him on the inside of his thighs because his bottom had become bruised.

8

Mere presence at the crime scene is insufficient proof to support a conviction, but presence at the scene coupled with other circumstances tending to show participation in the crime may be sufficient to sustain a guilty verdict. Pratt v. State, 744 N.E.2d 434, 436 (Ind. 2001); Roop v. State, 730 N.E.2d 1267, 1271 (Ind. 2000). Such circumstantial evidence is sufficient if it allows for reasonable inferences enabling the jury to determine guilt beyond a reasonable doubt. Pratt, 744 N.E.2d at 437; Bonds v. State, 721 N.E.2d 1238, 1241-42 (Ind. 1999).

In Pratt, the Supreme Court affirmed the defendant's convictions for murder, battery, and neglect of a dependent, and his sixty-year sentence. The victim, the defendant's eleven-month-old son, was hospitalized, and on the morning following a night when the defendant stayed alone in the hospital room with his son, a nurse observed the boy in poor condition. Two weeks later, the boy died from blunt force trauma to his head, an injury sustained sometime between the moments the boy's mother left him alone with his dad in the evening and the nurse observed his condition the next morning. No direct evidence linked the defendant to the child's injury. But the evidence showed that the defendant was alone with the boy overnight; the boy's injury included a bruising pattern consistent with an object in the room; a monitor designed to sound when the boy's heart or respiratory rate reached certain thresholds was deactivated during the night; and the monitor, upon being turned back on, showed readings characteristic of a herniated brain. These facts, taken together, along with reasonable inferences from them, formed a sufficient basis, the Court held, on which the jury could have found the defendant guilty. Pratt, 744 N.E.2d at 437.

Likewise in this case, we find that the evidence favorable to the verdict, together with its reasonable inferences, is sufficient for a reasonable jury to find each element of the crime proven beyond a reasonable doubt. While the evidence without the excluded witnesses was sufficient for a conviction, the erroneous exclusion of witnesses requires a new trial.

**Conclusion**

We reverse the judgment of the trial court and remand for a new trial.

9

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.