**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED

May 16 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY WARE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1109-CR-495 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
Cause No. 49G05-1004-MR-32650

**May 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Shortly after Jimmy Johnson was gunned down in the doorway of his apartment, police arrested his ex-roommate Timothy Ware, with whom Johnson had been in a financial dispute. Eyewitnesses placed Ware at the apartment complex driving a dark Ford Taurus, arguing with Johnson's nephew, and threatening a tenant with a handgun. Although no one witnessed the actual shooting, eyewitnesses observed a dark Ford Taurus speeding away from the complex immediately thereafter.

A jury convicted Ware of murder and carrying a handgun without a license. Ware appeals, claiming that the evidence was insufficient to establish his identity as the shooter. Finding the evidence sufficient to support his convictions, we affirm.

**Facts and Procedural History**

In the winter of 2010, Ware and Johnson were living in Johnson's apartment at the Presidential Estates complex in Indianapolis. Ware moved out after an unresolved disagreement with Johnson over money and a television. He continued to visit the complex from time to time because his mother lived there.

On March 5, 2010, Johnson's apartment was burglarized and the television was stolen. There were no arrests in connection with the incident.

Sometime between 12:45 and 2:00 a.m. on April 21, 2010, Johnson's nephew Walter Johnson ("Walter") drove Johnson back to his apartment after an evening out. As Walter was leaving the complex, he encountered Ware driving into the complex. Ware swerved his

dark Ford Taurus as if to hit Walter's vehicle. According to Walter, both vehicles stopped and the following confrontation ensued:

> I asked him—I was like, what's going on, man? I was like, what's this you threatening my uncle? He was like, cause that nigga [sic] owes me some money. And I like, he don't owe you nothing. He said, yes he do. I was like, no he don't. He's like, he was supposed to come and holla [sic] at me Friday. I was like, man, my uncle don't owe you nothing. He was like, what do you mean? I was like, all right. He was like, all right what? And I slammed my door and pulled off.

Tr. at 198. As Walter left, he noticed via his rearview mirror that one of Ware's brake lights was broken and taped. Walter immediately phoned Johnson to warn him that he had encountered Ware in the complex.

Sometime between 1:00 and 2:00 a.m., another resident, Kristopher Whitelow, stepped outside his apartment and encountered Ware. Whitelow knew Ware as "Slim" and had seen him in the complex a couple times before. According to Whitelow, Ware pointed a handgun at him and told him to "keep walking." *Id.* at 128.

At 2:06 a.m., a 911 dispatcher received a call from Johnson stating that "Timothy Ware or Thomas" was knocking on his door, threatening him. State's Ex. 84. At 2:10 a.m., a 911 dispatcher received a call from one of Johnson's neighbors reporting that she had heard two gunshots and had seen Johnson lying motionless on the ground. Seconds later, dispatch received a report from another neighbor, stating that she heard a pop-pop, went outside, and saw Johnson lying motionless. Another neighbor reported that she heard the shots, looked out her window, and saw a purple Ford Taurus "flying out of the complex." Tr. at 262-63. Whitelow also reported hearing gunshots and then seeing a sedan that appeared to be purple

traveling very fast. When police arrived, they found Johnson's body lying just outside his doorway and spent bullet casings nearby. They found other items indicating that a struggle had taken place. An autopsy determined that Johnson died from multiple gunshot wounds.

The next day, Walter gave a statement to police and identified Ware from a photo array. The following day, police traced a black Ford Taurus that was registered to Ware's girlfriend, and the vehicle had a broken, taped taillight. On April 23, 2010, Whitelow reported his encounter with Ware to police and identified Ware from a photo array as the man who had pointed a gun at him shortly before the shooting. Whitelow collected a $1000 Crime Stoppers reward, and the detective who took his statement characterized it as providing "good information" and facts that were "never published." *Id*. at 253-54.

On April 26, 2010, the State charged Ware with murder and class C felony carrying a handgun without a license. Months later, police found a handgun in a retention pond nearby and matched it to the casings found at the scene of the crime. A jury subsequently convicted Ware of murder and class A misdemeanor carrying a handgun without a license. Ware now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Ware challenges the sufficiency of evidence supporting his convictions. When reviewing a sufficiency of evidence claim, we neither reweigh evidence nor assess witness credibility; rather, we consider only the probative evidence and reasonable inferences most favorable to the verdict. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We will affirm if no reasonable factfinder could conclude that the elements of the crime have been proven

4

beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007). A conviction may be based on circumstantial evidence alone. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), *trans. denied*.

Ware asserts that the evidence establishes only that he was present at the complex, not that he was Johnson's shooter. The defendant's mere presence at the crime scene with the opportunity to commit a crime is not sufficient to support a conviction, but when his presence is combined with other circumstances tending to indicate participation, such evidence may be sufficient to support a conviction. *Pratt v. State*, 744 N.E.2d 434, 436 (Ind. 2001).

Here, the evidence goes well beyond demonstrating presence and an opportunity to commit a crime. Two eyewitnesses interacted with Ware in Johnson's complex just before the shooting. Walter's testimony about his encounter with Ware provided a motive for Johnson's murder, and Whitelow's testimony placed a gun in Ware's hand. Moreover, just before his death, Johnson told the 911 dispatch operator that Ware was knocking on his door and threatening him. Finally, Whitelow and another neighbor reported seeing a purple Ford Taurus speeding away shortly after the shots were fired. The vehicle was the same make and model as the one driven by Ware at the time he confronted Walter, and the taped brake light was consistent with the taped taillight on a black Ford Taurus registered to Ware's girlfriend.

Ware argues that he was present at the complex to visit relatives, that there was a discrepancy between the color of his vehicle and the vehicle that sped away after the shooting, that the handgun recovered from the pond was never linked to him, and that Whitelow's collection of reward money tainted his testimony. These arguments amount to an

5

invitation to reweigh evidence and judge witness credibility, which we may not do. The jury heard this evidence and made its factual and credibility determinations accordingly. We conclude that the evidence and inferences most favorable to the verdict are sufficient to support his convictions. Consequently, we affirm.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.