## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 15 2016, 11:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Travis S. Friend
Andrew L. Teel
Haller & Colvin, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cissy Chantel Mae Russell,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 15, 2016

Court of Appeals Case No.
90A02-1602-CR-355

Appeal from the Wells Circuit Court

The Honorable Kenton W. Kiracofe, Judge

Trial Court Cause No.
90C01-1410-F4-3

**Najam, Judge.**

# Statement of the Case

Cissy Chantel Mae Russell appeals her conviction for burglary, as a Level 4 felony, following a jury trial. She raises two issues on appeal, namely:

1.      Whether the trial court abused its discretion when it admitted State's Exhibit 24, which was a map that summarized cell phone locations.

2.      Whether the State presented sufficient evidence to support the conviction.

We affirm.

# Facts and Procedural History

Russell is the estranged half-sister of Kelly Gartin ("Kelly"). In September 2014, Kelly lived with her husband, Andrew Gartin ("Andrew"), in a house in rural Wells County, and Russell lived in Connecticut. On the morning of September 23, 2014, the Gartins each left for work by 7:30 a.m. Kelly was the last person to leave the house, and she closed the entry door but left it unlocked. Later that morning, the Gartins' neighbor, James LeMaster, heard a truck engine revving on the Gartins' property. LeMaster called Kelly to let her know that there was a noise coming from her property, and he then proceeded to the Gartins' property to investigate.

Once at the property, LeMaster saw two vehicles behind the Gartins' residence: a red pickup truck and a silver pickup truck. LeMaster recognized the red truck as belonging to the Gartins. The rear bumper of the silver truck was

approximately twelve to fifteen feet from the door of the Gartins' residence. Both trucks were stuck in the mud. LeMaster found a woman, later identified as Russell, standing by the bed of the silver pickup truck. Russell appeared to be nervous, and she looked as if she had been sweating profusely. When LeMaster asked Russell who she was, Russell initially said she was Kelly's aunt. However, Russell later apologized to LeMaster and informed him that she was not Kelly's aunt, but her half-sister. LeMaster asked Russell why she was there, but Russell did not answer.

[5] LeMaster conversed with Russell for approximately an hour before Kelly arrived. During that time, LeMaster noticed a number of items in the bed of the silver pickup truck, including a large rectangular object, but they were all covered up with blankets. During her conversation with LeMaster, Russell stated that she had traveled to Indiana from the East Coast to help a friend move and then to see her mother. However, Russell and Kelly's mother, Rabecka Grossman, was actually on vacation in another state at that time. And, prior to leaving for her vacation, Grossman had informed Russell that Grossman would be out of town from September 22 through September 29, 2014.

[6] At around noon, Andrew arrived at the property, having learned from Kelly via text that there was a disturbance at their home. Andrew asked Russell why she was there, and Russell stated she was there to help a friend move. Russell said she had driven to the rear of the Gartins' home "to see if [the Gartins] would come out and talk to her because she thought someone was home." Tr. at 312.

Andrew also saw items in the bed of the silver pickup truck that were covered with blankets.

[7] Kelly arrived at the property approximately fifteen to twenty minutes after Andrew had arrived, and she asked Russell why Russell was there. Russell responded that she was there to throw some things in the Gartins' dumpster and to see Kelly and then see Russell and Kelly's mother. Russell stated that she had driven to the back of the Gartins' house because she thought that would cause Kelly to come out of the house to speak with her. While she spoke to Kelly, Russell sat on top of the large rectangular object covered with a blanket in the bed of the silver pickup truck. LeMaster then pulled Russell's truck out of the mud using a tractor, and Russell left the property in the silver pickup truck.

[8] After Russell left, Andrew and Kelly noticed that items were missing from their home, including a chainsaw, jewelry boxes, DVDs, Andrew's prescription drugs, children's games, and a gun safe. The gun safe was approximately the same size as the large covered rectangular object on which Russell had been sitting in the bed of her pickup truck. The gun safe weighed approximately 100 to 150 pounds when empty, but it had had nine guns in it on September 23. The safe had been located in the Gartins' bedroom, which was on the opposite side of the house from the entrance near which Russell's pickup truck had been parked.

[9]     Andrew called the Wells County Sheriff's Department to report the stolen items. Detective Randy Steele's subsequent investigation of the crime included photographing the Gartins' residence. Detective Steele suggested that the Gartins attempt to contact Russell. Kelly was able to reach Russell's husband on his cell phone, but he was unaware of Russell's trip to Indiana. Detective Steele also reached Russell's husband on his cell phone and asked him to have his wife contact Steele.

[10]    In the early morning of September 24, Russell called the Wells County Sheriff's Department from a gas station on Interstate 76 in Portage County, Ohio, and spoke with a dispatcher. Russell told the dispatcher that she had gotten a message from Andrew that she was going to be arrested, and she asked the dispatcher what she should do. The dispatcher told Russell to stay where she was and a deputy would be sent to speak with her. Deputy Mark Millhoff of the Portage County Sheriff's Office went to Russell's location at approximately 2:30 a.m. on September 24 and found Russell in the silver pickup truck. After obtaining Russell's consent to a search of her truck, Deputy Millhoff searched the bed of the pickup truck and found only moving blankets and a "hand truck moving dolly." *Id.* at 258. Russell then gave a statement to Deputy Millhoff in which she denied ever entering the Gartins' residence or outbuildings. Russell also stated that she had transported various garbage items from Connecticut to Indiana, where she had intended to dispose of them. Deputy Millhoff advised Russell that she was free to leave.

[11] On October 2, law enforcement in Stark County, Ohio, discovered items from the Gartins' home that had been dumped alongside a trail located in Canal Fulton, Ohio. These items included Andrew's prescription bottles and a necklace that the Gartins' daughter had made. The officers collected the items and sent them to the Wells County Sheriff's Department.

[12] The State charged Russell with burglary, as a Level 4 felony. At the ensuing jury trial, the court admitted into evidence, without objection, State's Exhibit 23, which consisted of records the State had subpoenaed from Verizon Wireless for a cell phone belonging to Russell.[1] The trial court also admitted, over Russell's objection to an "insufficient foundation," Exhibit 24, which was a map of areas of Ohio from which Russell had placed cell phone calls on September 23 and 24. Wells County Detective Diane Betz testified that, using her training on cell phone technology, she was able to summarize the complicated cell phone records contained in Exhibit 23 into the more easily understood map contained in Exhibit 24. The map depicted the locations of Russell's cell phone at the dates and times of three calls. Detective Betz had generated the map by retrieving latitude and longitude data from the Verizon records in Exhibit 23 and typing that data into a "Streets and Trips" application that converts latitudes and longitudes into specific pinpoints on a map. *Id.* at 420, 422. One of the calls depicted in Exhibit 24 was placed near Canal Fulton,

---

[1] The State had previously provided the records contained in State's Exhibit 23 to Russell. Tr. at 426. However, the State did not print out all of the records contained in Exhibit 23 because it was too voluminous to conveniently do so. Tr. at 418.

Ohio, at "0946 hours" on September 24 from "40.89142 degrees N 81.57404 degrees W," and another was placed near the gas station on Interstate 76 in Portage County, Ohio, later that same day. State's Ex. 24.

[13] The jury found Russell guilty as charged, and the trial court entered judgment of conviction and sentence accordingly. This appeal ensued.

# Discussion and Decision

### *Issue One: Admission of Evidence*

[14] Russell first contends that the trial court erred when it admitted into evidence State's Exhibit 24. We review a trial court's admission or exclusion of evidence for an abuse of discretion, which occurs if the court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Speybroeck v. State*, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007).

[15] This case is similar to *McCowan v. State*, 10 N.E.3d 522 (Ind. Ct. App. 2014), *summarily aff'd in relevant part*, 27 N.E.3d 760, 768 (Ind. 2015), where we upheld the admission of testimony that was similar to Betz's testimony and made by an officer with training similar to Betz's training. In *McCowan*, the officer used his special training on cell phone technology to read Verizon cell phone records and, from those records, plot out on a map the defendant's location at certain times and places. The officer then testified about the map which summarized the information from the Verizon cell phone records. We held that such

testimony was admissible[2] because the witness was not offering expert witness testimony, but using his specialized training to testify about general principles to help the jury understand the information contained in the Verizon cell phone records. *Id*. at 532-33.

[16] As in *McCowan*, Betz "did not personally perform any calculations or analysis to render an opinion about the location of [Russell's] phone." *Id*. at 532. Rather, she used her training to read the complicated Verizon records in State's Exhibit 23—which had already been admitted without objection—to summarize and present that information in a way that would help the jury understand, *i.e.*, in the form of the map contained in State's Exhibit 24.[3] Testimony presented by such a "skilled witness" was admissible under Indiana Rule of Evidence 701 because it was rationally based on Betz's perception of the information contained in the State's already-admitted Exhibit 23 and because it was helpful to the jury's clear understanding of the complicated Verizon cell phone records. *See, e.g.*, *Satterfield v. State*, 33 N.E.3d 344, 353 (Ind. 2015). And, as Exhibit 24 was "a summary, chart or calculation to prove the content" of the voluminous records in already-admitted Exhibit 23 that could

---

[2] We actually held that the defendant had waived his objections to both the cell phone records and the officer's testimony about those records but, notwithstanding waiver, the records and testimony were admissible. *Id*. at 525-26.

[3] Thus, Russell is incorrect when she states that the "RTT [i.e., real time tool] records" on which Betz relied for Exhibit 24 "were never presented as evidence." Appellant's Br. at 19. It is clear that those records were part of State's Exhibit 23. Tr. at 419.

not be easily examined in court, it was admissible pursuant to Indiana Rule of Evidence 1006.

[17] Moreover, as the trial court noted, Russell had the opportunity to, and did, cross-examine Betz about State's Exhibit 24. It was up to the jury to weigh that evidence and judge the credibility of the witness. *McCowan*, 10 N.E.3d at 533 ("[A]ny dispute regarding the accuracy of the estimates [of the cell phone locations] went to the weight rather than to the admissibility of the evidence and should be addressed through cross-examination."). The trial court did not abuse its discretion in admitting State's Exhibit 24 and Betz' testimony related to that exhibit.

### Issue Two: Sufficiency of the Evidence

[18] Russell maintains that the State failed to provide sufficient evidence to support her conviction. In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *See, e.g.*, *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010). We consider only the probative evidence and reasonable inferences therefrom that support the conviction, *Gorman v. State*, 968 N.E.2d 845, 847 (Ind. Ct. App. 2012), *trans. denied*, and we "consider conflicting evidence most favorably to the [fact-finder's] ruling," *Wright v. State*, 828 N.E.2d 346, 352 (Ind. 2005). We affirm if the probative evidence and reasonable inferences drawn from that evidence "could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Jackson*, 925 N.E.2d at 375.

[19]     To prove Russell committed burglary, as a Level 4 felony, the State was required to show that Russell broke and entered a building that was a dwelling of another person with the intent to commit a felony or theft in that building. Ind. Code § 35-43-2-1 (2014). Russell does not dispute that someone broke and entered into the Gartins' residence with the intent to steal their property. Rather, she maintains that the State failed to provide sufficient evidence that she was that person because, she alleges, there was no evidence that anyone saw her in the Gartins' home or outbuildings or saw her in possession of the Gartins' stolen property. However, it is well-established that a crime may be proven by circumstantial evidence if the trier of fact may reasonably draw inferences from such evidence that enable it to find the defendant guilty beyond a reasonable doubt. *Pratt v. State*, 744 N.E.2d 434, 437 (Ind. 2001). And, although mere presence at the crime scene is insufficient proof to support a conviction, "presence at the scene coupled with other circumstances tending to show participation in the crime may be sufficient to sustain a guilty verdict." *Rohr v. State*, 866 N.E.2d 242, 248-49 (Ind. 2007).

[20]     Here, the witness testimony and the State's exhibits showed that Russell was at the back of the Gartins' home on the morning of September 23, 2014, after the Gartins had left the home without locking the door. A neighbor discovered that Russell had her pickup truck parked by the Gartins' door, and the bed of the truck contained objects covered up with blankets. Russell gave conflicting accounts to the neighbor and the Gartins about why she was in Indiana and at the Gartins' residence, and she appeared nervous. After Russell left, the

Gartins noticed items missing from their residence that were not missing before Russell was there. Russell's cell phone records show that she traveled from Indiana through Ohio on September 23 and 24, during which time she made several cell phone calls. State's Exhibits 23 and 24 show that Russell made a cell phone call from Canal Fulton, Ohio on September 24 at 9:46 a.m. Approximately one week later, Ohio law enforcement found some of the Gartins' stolen property in Canal Fulton, Ohio. It was reasonable for the jury to infer from all of that circumstantial evidence that Russell broke and entered the Gartins' residence with the intent to steal their property.[4] The State provided sufficient evidence to support Russell's burglary conviction.

Affirmed.

Vaidik, C.J., and Baker, J., concur.

---

[4] Russell contends that it was a "physical impossibility" for her to have stolen the Gartins' gun safe because it was too heavy for her to have carried it by herself. Appellant's Br. at 20-22. Given the evidence that all the items in the bed of Russell's pickup truck were covered by blankets on September 23 and that a dolly and blankets were in the bed of her truck on September 24, there was circumstantial evidence from which the jury could reasonably infer that Russell used a dolly to move the gun safe to her truck and that it was not visible on September 23 because it was covered with a blanket, like all the other items in her truck at that time. Regardless, additional items were stolen from the Gartins' residence that Russell could have easily carried, e.g., jewelry boxes.