## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2017, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Zackary L. Schulz,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 28, 2017

Court of Appeals Case No.
79A02-1605-CR-1238

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1508-F4-7

**Mathias, Judge.**

[1] Following a bench trial in Tippecanoe Superior Court, Zackary L. Schulz ("Schulz") was convicted of Level 4 felony dealing in methamphetamine and

Class B misdemeanor false informing. Schulz appeals and argues that the State presented insufficient evidence to support his conviction for dealing in methamphetamine.

[2] We affirm.

## Facts and Procedural History

[3] In August 2015, Adam ("Adam") Wright lived with his mother, Elizabeth Wright ("Elizabeth") in Lafayette, Indiana. On the evening of August 10, as Adam returned home from work, he entered the house to find his brother, John Wright ("John"), in the house with an undetermined number of other people, one of whom was Schulz. The interior of the house was smoky or foggy and, as later reported by the police, contained a strong chemical smell. Adam suspected that his brother was manufacturing methamphetamine, so he telephoned 911.[1]

[4] Officers from the Lafayette Police Department arrived on the scene a few minutes later and were flagged down by Adam, who directed them to the house. As the police approached the house, they noted a strong chemical smell associated with the manufacture of methamphetamine. Looking through an open window, the police saw that the house was filled with a hazy smoke. They also saw John in the kitchen with a folded piece of aluminum foil. A fan was blowing smoke away from the stovetop. The police delayed going into the

---

[1] Adam, in an apparent effort to get the police to arrive quickly, also falsely told the dispatcher that shots had been fired.

house until they received the approval of the tenant, Elizabeth. Before they could obtain her permission, John and Schulz came out of the front of the house. The police apprehended John, but Schulz ran back into the house and peered out the blinds in the window. The police yelled at Schulz to come out of the house, but he remained inside and, at some point, ran upstairs and hid in a bedroom.

[5] The police spoke with John, who gave them Schulz's name. The police ran a check on Schulz and discovered that he had an active warrant for his arrest on another matter. After obtaining Elizabeth's permission to search the house, the police entered and again noticed a haze inside the home and a strong chemical smell. One of the officers in the house had a police dog with him, and this dog located Schulz in the upstairs bedroom closet. The police told Schulz to come out of the closet, and he initially stated that he would. When he did not, however, the police sent the dog in after him. The dog bit Schulz, who quickly surrendered. At first, Schulz lied about his name but eventually admitted who he was and that he had an outstanding warrant for his arrest.

[6] The police searched the house and discovered an active methamphetamine manufacturing setup in the kitchen. The items the police found in the kitchen included a hydrochloric gas generator that was still smoking, table salt, coffee filters, sulfuric acid, pseudoephedrine, lithium batteries, and scissors used to cut lithium strips from the batteries. Also found was a fan blowing across a glass bowl that appeared to have been used to mix the ingredients to make the methamphetamine. A search of the garage revealed a "one pot" container that

was actively making methamphetamine. Tr. pp. 123, 131. A test of this vessel revealed the presence of methamphetamine.

[7]     On August 10, 2015, the State filed a four-count information against Schulz alleging that he committed the following crimes: Count I, Level 4 felony dealing in methamphetamine by manufacture; Count II, Level 5 felony possession of chemical reagents or precursors with the intent to manufacture; Count III, Class A misdemeanor resisting law enforcement; and Count IV, Class B misdemeanor false informing.

[8]     A bench trial was held on March 22, 2016, at the conclusion of which the court found Schulz guilty of Counts I, II, and IV, but not guilty of Count III. At a sentencing hearing held on May 4, 2016, the trial court merged Count II into Count I for sentencing purposes sentenced Schulz to seven years, with four executed and three suspended to probation. The court imposed a concurrent 180-day sentence on Count IV. Schulz now appeals.

## Discussion and Decision

[9]     Schulz argues on appeal that the State failed to present evidence sufficient to support his conviction for dealing in methamphetamine by manufacture. Our standard of review on claims of insufficient evidence is well settled:

> When reviewing a claim that the evidence is insufficient to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. We consider only the probative evidence supporting the [judgment]

and any reasonable inferences which may be drawn from this evidence. We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.

*Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015), *trans. denied* (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)). Circumstantial evidence alone is sufficient to sustain a conviction. *Bush v. State*, 772 N.E.2d 1020, 1022 (Ind. Ct. App. 2002).

[10] Here, Schulz challenges his conviction for dealing in methamphetamine by manufacture. The relevant statute provides that "A person who . . . knowingly or intentionally . . . manufactures . . . methamphetamine, pure or adulterated, commits dealing in methamphetamine . . . ." Ind. Code § 35-48-4-1.1(a). The crime of dealing in methamphetamine is generally a Level 5 felony. *Id.* However, the crime is elevated to a Level 4 felony if "the amount of the drug involved is less than one (1) gram and an enhancing circumstances applies." *Id.* at § 1.1(c)(2). One of these "enhancing circumstances" is that the offense was committed "in, on, or within five hundred (500) feet of . . . a public park while a person under eighteen (18) years of age was reasonably expected to be present." I.C. § 35-48-1-16.5(3)(B)(ii).

[11] Here, Schulz does not deny that the evidence was sufficient to establish that *someone* manufactured methamphetamine in the Wright household, nor does he deny that the was evidence sufficient to establish that the Wright home was within 500 feet of a public park at a time when a person under the age of

eighteen was reasonably expected to be present. He instead argues that the evidence was insufficient to establish that *he* was involved in the manufacture of methamphetamine. Schulz notes that no witness saw him participate in the manufacturing process or in proximity to the labs found in the kitchen or garage. Schulz contends that his mere presence at the scene and the opportunity to have participated in the manufacture of the methamphetamine is insufficient to establish that he, as opposed to John Wright, manufactured methamphetamine.

[12] Schulz is correct that "[m]ere presence at the crime scene with the opportunity to commit a crime is not a sufficient basis on which to support a conviction." *Willis v. State*, 27 N.E.3d 1065, 1068 (Ind. 2015) (quoting *Pratt v. State,* 744 N.E.2d 434, 436 (Ind. 2001)). However, "presence at the scene in connection with other circumstances tending to show participation, such as companionship with the one engaged in the crime, and the course of conduct of the defendant before, during, and after the offense, may raise a reasonable inference of guilt. *Id.* (citing *Maul v. State,* 731 N.E.2d 438, 439 (Ind. 2000)). Here, there were such other circumstances.

[13] John Wright was seen in the kitchen where the manufacturing "lab" was set up and at least partially operational. John's brother Adam was concerned about his brother because he was "running around" with Schulz. Tr. p. 158. Schulz and John were seen together at the scene. Thus, Schulz was John's companion. The course of conduct in which Schulz engaged is also highly indicative of his guilt. Schulz was in a house that was filled with smoke or fumes and reeked of the

smell of chemicals used to manufacture methamphetamine. A methamphetamine lab was set up in the kitchen of the house, with fans blowing the fumes out of the window. Thus, Schulz was in a house with an active methamphetamine manufacturing process underway and in plain view in the kitchen, yet he claimed that no smoke in the house other than from cigarettes. After John was apprehended by the police, Schulz went back into the house and peeked out of a window, from which it can reasonably inferred that he saw the police. Instead of obeying their commands to exit the house, he hid in a closet and did not come out of the closet until a police dog bit him.

[14] All of these circumstances support a reasonable inference that Schulz knew that methamphetamine was being manufactured in the home and was, at the very least, an accomplice to the manufacture of the methamphetamine. *See Schaaf v. State*, 54 N.E.3d 1041, 1043 (Ind. Ct. App. 2016) (noting rule that a person can be charged as a principal and convicted as an accomplice even if he did not participate in each and every element of the crime).

[15] Our supreme court has identified four factors that can be considered by the fact-finder in determining whether a defendant aided another in the commission of a crime: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime. *Id*. (citing *Wieland v. State*, 736 N.E.2d 1198, 1202 (Ind. 2000)). Here, Schulz was present at the scene of an active methamphetamine lab, he was a companion of John Wright, there is no suggestion that he opposed the crime, and he fled from

police. From this, the trial court could reasonably conclude that Schulz was guilty of manufacturing methamphetamine under a theory of accomplice liability. *See id.* at 1043-44 (holding that evidence was sufficient to support defendant's conviction of dealing heroin as an accomplice where defendant was present at the scene of the crime, was companions with the principal, failed to oppose the crime, suggested the place for the controlled buy to occur, and allowed the controlled buy to take place in his vehicle).

[16] Schulz's remaining arguments are little more than a request that we reweigh his testimony of and that of John Wright and come to a conclusion other than that reached by the trial court.[2] This is not our role as an appellate court. *See Harrison*, 32 N.E.3d at 247 (citing *McHenry*, 820 N.E.2d at 126).

[17] In conclusion, sufficient circumstantial evidence supports Schulz's conviction for dealing in methamphetamine.

[18] Affirmed.

Baker, J., and Pyle, J., concur.

---

[2] Schulz also claims that the testimony of Adam Wright was incredibly dubious. However, the incredible dubiosity rule is inapplicable here, where several witnesses testified and there was considerable circumstantial evidence. *See Baumgartner v. State*, 891 N.E.2d 1131, 1138 (Ind. Ct. App. 2008) (noting that application of the incredible dubiosity rule is limited to those situations where a *sole* witness presents inherently contradictory testimony that is equivocal or the result of coercion and there is a *complete lack* of circumstantial evidence of the defendant's guilt). Moreover, even though it was apparent that Adam was a reluctant witness, there was nothing about his testimony that was so inherently improbable that it ran counter to human experience such that no reasonable person could believe it. *See id.*