Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANDREW ABBOTT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 33A01-1201-CR-16 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Bob A. Witham, Judge
Cause Nos. 33C03-1109-FD-245, 33D02-1105-FD-132

**March 8, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Andrew Abbott appeals his conviction for receiving stolen property as a class D felony.[1] Abbott raises three issues, which we revise and restate as:

I.     Whether the court committed fundamental error in permitting the State to refile the charge against him;

II.    Whether the evidence is sufficient to support his conviction; and

III.   Whether the trial court erred in denying pre-trial detention credit.

We affirm in part, reverse in part, and remand.

## FACTS

In August 2010, Matt Huffman, a real estate agent, was hired to help sell a house owned by the father of Mike McKown. Huffman initially placed a key to the house in a realtor lock box. At some point in November 2010, Huffman made a copy of the key in the lock box, placed one of the keys without a tag back in the lock box, and gave the other key with a tag on it to Mike McKown so that he could have access to the house. McKown placed the key in his truck, which he parked at his house near the north side of New Castle, Indiana, and near State Road 3.

A short time after midnight on December 28, 2010, Nancy Weesner, who lived along State Road 3 outside the city limits of and to the north of New Castle, Indiana, observed Abbott outside her home on the other side of State Road 3 who "periodically would stop and turn around and look the opposite way, like maybe someone was going to come and get him." Transcript at 65. Weesner observed that Abbott walked around the house across the street a couple of times, stood behind some bushes at an adjacent property, walked around the garage a couple of times, and eventually "just laid down on

_____

[1] Ind. Code § 35-43-4-2 (Supp. 2009).

2

the ground and there was snow on the ground." Id. Weesner called the police and described her observations.

Henry County Deputy Sheriff Landon J. Dean arrived at the location and Deputy Sheriff Jordan Pruett eventually joined him in searching the area. The officers observed footprints in the snow which led around a residence and garage, located Abbott "against the garage and/or bushes" or "leaning up against the garage," and observed a baseball bat on the ground next to Abbott. Id. at 94. The officers conducted a pat down search of Abbott and discovered a "labeled key," which had a tag attached to it which contained the address of the house owned by McKown's father, and a yellow Stanley tape measure. Id. at 83. The officers arrested Abbott. The police contacted the owner of the residence where Abbott was arrested, and the owner did not personally know Abbott and had not given him permission to be on the property.

On December 29, 2010, McKown met at his father's house with police, Huffman, and McKown's property manager. McKown and Huffman opened the lock box and observed that the key was still in the box. McKown and his property manager searched the house to make sure that everything was still there. McKown's truck was parked at his residence and so he traveled to his home to check the truck for the key. McKown noticed that the truck, which he had not locked, "had been opened," that "[t]here was some paperwork laying on the floor of the truck," that he did not see his garage door opener or boat keys, and that a yellow tape measure was missing. Id. at 112. McKown later identified the key with the tag and the yellow tape measure discovered in Abbott's possession as belonging to him. At some point, Abbott sent a letter to McKown stating

3

that he had found the key in a Walmart parking lot and had planned to return the key to the address on the key.

PROCEDURAL HISTORY

On May 18, 2011, the State charged Abbott with receiving stolen property as a class D felony and with being an habitual offender under cause number 33D02-1105-FD-132 ("Cause No. 132"). Specifically, the information alleged that Abbott "did knowingly retain the property, to-wit: one (1) house key of another person, to-wit: Mike McKown, said property having been the subject of a theft, to-wit: said property having been removed from a realtors key box, without the authorization of Mike McKown." Appellant's Appendix at 5. An entry in the chronological case summary ("CCS") on May 23, 2011, indicates that a jury trial was scheduled for August 17, 2011.

On August 17, 2011, the State filed a motion to amend information providing that it desired to change the wording from "said property having been removed from a realtors key box" to the wording "said property having been removed from his vehicle." Id. at 12. The court heard arguments on the motion and found that the State's requested amendment appeared to be "more than just kind of a minor change" and that the change "certainly could affect the defendant's ability to be prepared to proceed with trial today." August 17, 2011 Transcript at 13. The court asked the State if it wished for the court to dismiss the case without prejudice and to refile the case or for the court to grant the motion to amend and grant a continuance to the defense in order to prepare for the trial. Abbott did not object. After a recess, the State asked the court to dismiss the case without prejudice, and the court granted the motion to dismiss.

4

On September 7, 2011, the State filed a charging information under cause number 33C03-1109-FD-245 ("Cause No. 245"), alleging that Abbott committed the offense of receiving stolen property as a class D felony and was an habitual offender. Specifically, the information alleged that Abbott "did knowingly retain the property, to-wit: one (1) house key of another person, to-wit: Mike McKown, said property having been the subject of a theft, in that said property had been removed from his truck, a 1997 burgundy Chevy truck, without the authorization of Mike McKown." Appellant's Appendix at 26. A jury trial was held on November 16, 2011, and the jury found Abbott guilty of receiving stolen property as a class D felony.

Abbott admitted to two prior felony convictions, and the court found him to be an habitual offender. The court sentenced Abbott to two and one-half years for the conviction for receiving stolen property as a class D felony and enhanced the sentence by three and one-half years for being an habitual offender, to be served in the Department of Correction ("DOC"). The court ordered Abbott's sentence under Cause No. 245 to be served consecutively to his sentence under cause number 33C01-0005-CF-12 ("Cause No. 12"). The court then stated:

> I will show, at this point, that the three hundred and fifty-one (351) actual days credit will be eligible to be applied towards any parole revocation in the Circuit Court case.[2] If it turns out that the [DOC] does not allow that credit against the parole violation, then I certainly would, upon request of the parties or Mr. Abbott himself, show that he would be entitled to [351] actual days credit against service in this sentence, but that's only if the [DOC] does not award credit against the parole violation.

---

[2] Based upon the abstract of judgment, the court appears to be referring to Cause No. 12.

November 16, 2011 Transcript at 175. The abstract of judgment provides: "Credit time of 351 actual days to be applied to [Cause No. 12]." Appellant's Appendix at 37.

On May 30, 2012, Abbott, *pro se*, filed a handwritten letter with the trial court stating that "on or around 2/14/2012 the parole board choose [sic] to void my parole violation warrant," that "[f]or whatever reason, which I am very grateful, the board didn't give me anymore time," and that "[i]n light of these events, I am respectfully requesting that my jail time credit of 351 [days] be allowed to apply to my current committment?" Id. at 48-49. Abbott, *pro se*, filed another letter on June 11, 2012, requesting an amended abstract of judgment showing the credit time applied under Cause No. 245. The State filed a response stating that Abbott "has provided no proof to establish what he states in his letter." Id. at 53. The trial court denied Abbott's request. Upon Abbott's request, this court agreed that Cause No. 132 and Cause No. 245 would be consolidated for appeal.

DISCUSSION

I.

The first issue is whether the court committed fundamental error in permitting the State to refile the charge against Abbott. Abbott argues that the court's decision to permit the State to dismiss the charge under Cause No. 132 and refile the charge under Cause No. 245 substantially prejudiced his rights. Abbott argues that "[i]f the State, after the Court's ruling, could not have prevailed at trial, Abbott's jeopardy rights are affected by allowing the State to have another bite at the apple" and that "[i]f the State may circumvent an adverse ruling by simply dismissing and re-filing the original charge,

6

defendant's [sic] will as a practical matter be unable to avail themselves of legitimate procedural rights." Appellant's Brief at 15. The State maintains that the court did not commit fundamental error when it allowed the State to dismiss and subsequently refile the charge against Abbott, that Abbott's substantial rights were not affected and jeopardy had not yet attached, that Abbott failed to show that his speedy trial rights were affected by the dismissal and refiling of the charges, that contrary to Abbott's argument the State did not receive an adverse ruling to its motion to amend, and that Abbott "has not shown that he was prejudiced by the solution the State chose and that he did not ultimately receive a fair trial." Appellee's Brief at 14.

A prosecuting attorney may obtain a dismissal at any time prior to sentencing, and the granting of such a motion does not by itself bar a subsequent trial of the defendant for the same offense. Malone v. State, 702 N.E.2d 1102, 1103 (Ind. Ct. App. 1998) (citing Ind. Code § 35-34-1-13; Joyner v. State, 678 N.E.2d 386, 393 (Ind. 1997), reh'g denied), trans. denied. "Absent the attachment of jeopardy, the State's dismissal of criminal charges does not preclude it from refiling and prosecuting a charge for the identical offense." Id.

The State may not refile if doing so will prejudice the substantial rights of the defendant. Id. The State does not necessarily prejudice a defendant's substantial rights when, on the refiled information, it amends the original information but charges the same offense. Id. The State is entitled to amend charges, even as to theory and identity, when it can be done without prejudicing the substantial rights of the accused. Id. (citations omitted).

7

In this case, the State did not receive an adverse ruling and was not seeking to "escape the ruling of the original court." See id. at 1104 (citations omitted); see also Beason v. State, 690 N.E.2d 277, 280 n.9 (Ind. 1998) (noting that "the prosecutor here used none of the powers or authority of that office to circumvent any court order or to prejudice the substantial rights of the defendant."). Further, Abbott has not demonstrated that the court permitting the State to refile the charge substantially prejudiced him based upon the fact that the State alleged in its refiled charging information that the house key was taken from McKown's truck rather than the lock box. Our review of the record shows that the State initially charged Abbott on May 18, 2011 under Cause No. 132; that on the day of the initially-scheduled jury trial on August 17, 2011, the court dismissed without prejudice the case due to the State's request to amend the charging information as it pertained to the location from which the key had been taken; that the State filed the amended charging information on September 7, 2011 under Cause No. 245; and that Abbott's jury trial was held on November 16, 2011. The record reveals that Abbott was not deprived of adequate time to prepare a defense. See id. (noting that the defendant's trial date was reset and that he had adequate time to prepare a defense). Neither was Abbott deprived of a fair trial as the record reveals that Abbott presented a defense before the jury which included an explanation for how he came into possession of the key, and he cross-examined the State's witnesses. Abbott has not demonstrated that his substantial rights were prejudiced by the filing of the amended charging information or that the State was barred from refiling the receiving stolen property charge. See id. (concluding that

8

the defendant's rights were not substantially prejudiced by the State's dismissal and refiling of the charges).

## II.

The next issue is whether the evidence is sufficient to sustain Abbott's conviction for receiving stolen property. In a review of a sufficiency of the evidence claim, we do not reweigh the evidence or reevaluate the credibility of witnesses. Rohr v. State, 866 N.E.2d 242, 248 (Ind. 2007), reh'g denied. We view the evidence most favorable to the verdict and the reasonable inferences therefrom and will affirm the conviction if there is substantial evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. Id.

Identification testimony need not necessarily be unequivocal to sustain a conviction. Heeter v. State, 661 N.E.2d 612, 616 (Ind. Ct. App. 1996). Elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. Bustamante v. State, 557 N.E.2d 1313, 1317 (Ind. 1990). As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. Id. Rather, we examine the evidence and the reasonable inferences therefrom that support the conviction. Id.

The offense of receiving stolen property as a class D felony is governed by Ind. Code § 35-43-4-2, which provides in part that "[a] person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a Class D felony." The amended charging

9

information alleged that Abbott "did knowingly retain the property, to-wit: one (1) house key of another person, to-wit: Mike McKown, said property having been the subject of a theft, in that said property had been removed from his truck, a 1997 burgundy Chevy truck, without the authorization of Mike McKown." Appellant's Appendix at 26. Thus, to convict Abbott of receiving stolen property as a class D felony, the State needed to prove that he knowingly retained McKown's house key that had been the subject of theft.

Abbott contends that "the naked possession without proof that the defendant received the goods knowing they had been stolen will not sustain the charge" and that the State "failed to prove anything more other than the fact that he merely had the key in his possession." Appellant's Brief at 10. Abbott argues that the owner of the key did not know it was missing or remember he had the key. Abbott argues that McKown testified that he had used his truck to plow snow on December 27th, and that he could have possibly gone to Walmart around this period. Abbott further argues that, while the State presented aerial views of the location of the homes and neighborhoods, it did not present evidence as to the exact distances between the location where the key was allegedly stolen and the location Abbott was discovered. Abbott also argues that witnesses testified that they were with Abbott when he found the key.

The State maintains that the evidence was sufficient and that Abbott's possession of the key is to be considered along with the other evidence in the case. The State argues that Abbott was in possession of McKown's recently stolen key to his parents' residence, that the key had been removed from McKown's truck along with other items, at least one of which was in Abbott's possession at the time of the arrest, that the key was clearly a

10

key to a residence because it had a label on it with the residence's address, and that there is no reasonable explanation for Abbott's legal possession of such a key. The State further argues that the jury clearly rejected the explanation that Abbott found the key in a Walmart parking lot. The State asserts that Abbott's unexplained possession of a key which had been stolen from a truck along with other items, coupled with the fact that the key was marked as a key to a residence to which Abbott had no connection, is circumstantial evidence that Abbott knew the key had been stolen.

While the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft or receiving stolen property, such possession is to be considered "along with the other evidence in a case, such as how recent or distant in time was the possession from the moment the item was stolen, and what are the circumstances of the possession (say, possessing right next door as opposed to many miles away)." Donovan v. State, 937 N.E.2d 1223, 1226 (Ind. Ct. App. 2010) (quoting Fortson v. State, 919 N.E.2d 1136, 1143 (Ind. 2010)), trans. denied. The fact of possession and all the surrounding evidence about the possession must be assessed to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt. Id.; see also Girdler v. State, 932 N.E.2d 769, 772-773 (Ind. Ct. App. 2010) (noting that, in the context of charges for theft or receiving stolen property, possession of recently stolen property is to be considered along with the other evidence in a case and the circumstances of the possession). The trier of fact must assess all of the evidence instead of focusing upon one piece of evidence, such as possession of recently stolen property. Donovan, 937 N.E.2d at 1226.

11

In this case, Abbott's possession of the key to the house of McKown's father is to be considered in light of the other evidence in the case. The evidence most favorable to the verdict reveals that Abbott was observed and ultimately apprehended a short time after midnight on December 28, 2010, near the home of Weesner, that Abbott had walked around the residence and garage and was "against the garage and/or bushes" or "leaning up against the garage," see Transcript at 94, and the officers discovered that Abbott was in possession of a house key with the tag on it and a yellow Stanley tape measure which had been taken from McKown's truck. The State introduced an exhibit containing an aerial photograph depicting the location of McKown's residence where his truck was parked, the location where Abbott was arrested near Weesner's residence on State Road 3, and the relative distance and relation between the two locations. McKown testified that when he checked his truck on December 29, 2010, he noticed that the truck, which he had not locked, "had been opened," that "[t]here was some paperwork laying on the floor of the truck," that he did not see his garage door opener or boat keys, and that a yellow tape measure was missing. Transcript at 112. When asked when he recalled "last being in the truck," McKown testified "[t]he night before the incident." Id. at 113. Abbott presented testimony that he had found the key in a Walmart parking lot. When McKown was asked whether he recalled going to Walmart at any time around Christmas 2010, McKown testified that he did not recall.

To the extent that Abbott requests that we reweigh the evidence or reevaluate the credibility of witnesses, we cannot do so. See Rohr, 866 N.E.2d at 248. Further, we note

12

that, in <u>Gibson v. State</u>, the Indiana Supreme Court discussed theft and receiving stolen property and held:

> If the State meets its burden of proof with respect to all the necessary elements of either the theft or receiving stolen property offense as alleged in the charging instrument, it is of no consequence whether the accused was the person who actually took the stolen property from its authorized possessor because, once this burden is met, the State has proved that the accused, whether actual thief or not, has done precisely what is forbidden by both subsection (a) and (b) [of Ind. Code § 35-43-4-2]—knowingly or intentionally exercising unlawful control over property of another with a purpose to deprive.

643 N.E.2d 885, 892 (Ind. 1994) (footnote omitted).

While the jury could have made different inferences from the evidence, we cannot say that the inferences made by the jury as the trier of fact here were unreasonable. Based upon the evidence, a rational factfinder could have found that Abbott knowingly retained the property of McKown that had been the subject of theft and knowingly exercised unlawful control over the property with a purpose to deprive. Thus, we conclude that evidence of probative value exists from which the jury could have found Abbott guilty beyond a reasonable doubt of receiving stolen property as a class D felony. See <u>Donovan v. State</u>, 937 N.E.2d 1223, 1226-1227 (Ind. Ct. App. 2010) (citing <u>Fortson</u> and holding that the evidence was sufficient to sustain the defendant's conviction for auto theft), <u>trans.</u> <u>denied</u>.

## III.

The next issue is whether the trial court erred in denying Abbott's request for pre-trial detention credit. Abbott argues that a "trial judge must give pre-trial credit time immediately, not later," that the court "should have immediately applied the credit time

13

to the charge that Abbott was being sentenced on, not to a possible unrelated parole violation," and that Abbott is entitled to the 351 days credit toward his sentence in Cause No. 245. Appellee's Brief at 12-13. The State argues that "[i]f a defendant receives consecutive terms, he or she is only allowed credit time against the total or aggregate of the terms," that Abbott "of course, is entitled to the 351 days somewhere, and he is not without remedy," and that Abbott "has recourse under Indiana Post-Conviction Rule 1, Section 1(a)(3),"[3] but that Abbott "has to show the court with proof other than a self-serving statement that he did not receive credit in [Cause No. 12]." Appellee's Brief at 11.

In Tate v. State, the defendant was charged in 1999 with several offenses arising out of his operating a vehicle while intoxicated and later pled guilty to those charges and was placed on probation. 813 N.E.2d 437, 437 (Ind. Ct. App. 2004). In 2003, the defendant was charged with operating a vehicle after being adjudged an habitual traffic offender and another charge and days later was released on his own recognizance. Id. In June 2003, the State claimed that the defendant had violated the probation he received after he pled guilty in 1999. Id. In August 2003, the defendant admitted the probation violation and also pled guilty to operating a vehicle after being adjudged an habitual traffic offender. Id. In September 2003, the trial court sentenced the defendant to four and one-half years incarceration for the probation violation and three years upon the guilty plea conviction. Id. The trial court did not award the defendant any credit time for

---

[3] Ind. Post-Conviction Rule 1, Section 1(a) provides in part: "Any person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims: . . . (3) that the sentence exceeds the maximum authorized by law, or is otherwise erroneous; . . . may institute at any time a proceeding under this Rule to secure relief."

14

his pretrial incarceration but rather "stated that the credit time would be saved for the disposition of a pending case." Id. at 437-438. At the time of his sentencing, the defendant had entered no plea on the pending charge. Id. at 438.

On appeal, the defendant claimed that the trial court was without authority to "save" the pretrial detention credit time and apply it upon disposition of the pending charge. Id. This court observed the requirements of Ind. Code § 35-38-3-2, which provided in part:

> (a) When a convicted person is sentenced to imprisonment, the court shall, without delay, certify, under the seal of the court, copies of the judgment of conviction and sentence to the receiving authority.
>
> (b) The judgment must include:
>
> * * * * *
>
> (4) The amount of credit, including credit time earned, for time spent in confinement before sentencing. . . .

(Burns Code Ed. Repl. 1998) (subsequently modified by Pub. L. No. 119-2008, § 17 (eff. July 1, 2008); Pub. L. No. 106-2010, § 12 (eff. July 1, 2010)).[4] The court also observed the requirements of Ind. Code § 35-50-60-3[5] and that, in Stephens v. State, 735 N.E.2d

---

[4] The relevant portions of the current version of Ind. Code § 35-38-3-2 are substantively similar to the version discussed in Tate.

[5] At the time, Ind. Code. § 35-50-6-3 provided:

(a) A person assigned to Class I earns one (1) day of credit time for each day the person is imprisoned for a crime or confined awaiting trial or sentencing.

(b) A person assigned to Class II earns one (1) day of credit time for every two (2) days the person is imprisoned for a crime or confined awaiting trial or sentencing.

(c) A person assigned to Class III earns no credit time.

278, 284 (Ind. Ct. App. 2000), <u>trans. denied</u>, the court noted that determination of a defendant's pretrial credit time "is dependent upon two factors: (1) pretrial confinement and (2) the pretrial confinement being a result of the criminal charge for which the sentence is being imposed." <u>Tate</u>, 813 N.E.2d at 438. The court then held:

> Given the clear mandate set forth in I.C. § 35-38-3-2 that the trial court must provide a copy of the judgment of conviction and sentence to the receiving authority and that it *must* include the amount of credit time earned for time spent in confinement before sentencing, in addition to case law which has consistently held that the pretrial credit must arise from pretrial confinement for the criminal charge for which the defendant is sentenced, we conclude that the trial court erred in failing to award Tate his credit time when he was sentenced. Thus, we remand to the trial court to revise the sentence so that [the defendant] receives the credit time which he earned. In so doing, we recognize that we do not know whether any subsequent action has been taken in regard to the third charge which was pending at the time of [the defendant's] sentencing. If [the defendant] has been sentenced upon that charge, it may very well be that the credit time was applied to that charge. If such is the case, the sentence upon that charge will have to be amended to reflect any changes made to the prior sentence so that [the defendant] does not receive double credit, which was appropriately the trial court's concern . . . .

<u>Id.</u> at 439.

Ind. Code. § 35-38-3-2 (Supp. 2010) requires that a judgment include the amount of credit time a defendant receives. Specifically, subsection (b) provides: "The judgment must include: . . . (4) the amount of credit, including credit time earned, for time spent in confinement before sentencing . . . ." <u>See also</u> <u>Bischoff v. State</u>, 704 N.E.2d 129, 130 (Ind. Ct. App. 1998) ("Credit is to be applied for time spent in confinement that is the result of the charge for which the defendant is being sentenced.") (citing <u>Willoughby v. State</u>, 626 N.E.2d 601, 602 (Ind. Ct. App. 1993)), <u>trans. denied</u>.

---

(Burns Code Ed. Repl. 1998) (subsequently modified by Pub. L. No. 80-2008, § 2 (eff. July 1, 2008)).

In this case, the trial court ordered Abbott's sentence for his conviction under Cause No. 245 to be served consecutively to his sentence under Cause No. 12 and ordered that Abbott's credit time of 351 actual days be applied to his sentence under Cause No. 12 unless the DOC did not allow the credit under that cause number. Based upon Ind. Code. § 35-38-3-2 and Tate and the cases cited above, we conclude that the court erred in ordering that Abbott's credit time be applied to his sentence or pending revocation under Cause No. 12. Therefore, we reverse on this issue and remand with instructions for the trial court to revise the sentence which Abbott received to reflect that he is entitled to have the credit time applied to his sentence under Cause No. 245 and, if there is any evidence that any of the credit time was applied to any sentence or revocation under Cause No. 12, to make any revisions necessary so that Abbott does not receive double credit. See Tate, 813 N.E.2d at 439.

For the foregoing reasons, we affirm Abbott's conviction for receiving stolen property as a class D felony and reverse and remand for proceedings consistent with this opinion to reflect that Abbott is entitled to pretrial detention credit under Cause No. 245 to the extent he would not receive double credit.

Affirmed in part, reversed in part, and remanded with instructions.

BAILEY, J., and VAIDIK, J., concur.

17