## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 29 2016, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeffrey A. Baldwin
Tyler D. Helmond
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Tyler Banks
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sattore E. Cooper, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 29, 2016 <br><br> Court of Appeals Case No. 29A02-1507-CR-1000 <br><br> Appeal from the Hamilton Circuit Court <br><br> The Honorable Paul A. Felix, Judge <br><br> Trial Court Cause No. 29C01-1310-FB-8527 |

**Bradford, Judge.**

# Case Summary

In October of 2013, Appellant-Defendant Sattore E. Cooper was charged with Class B felony burglary and Class D felony theft. Cooper was also alleged to be a habitual offender. Cooper was subsequently found guilty of Class B felony burglary and not guilty of Class D felony theft. He also admitted to being a habitual offender.

On appeal, Cooper argues that the evidence is insufficient to sustain his conviction for Class B felony burglary. Concluding otherwise, we affirm.

# Facts and Procedural History[1]

At approximately mid-day on September 18, 2013, Gareth Evans returned to his residence at the Penn Circle Apartments in Carmel to eat lunch and walk his dog. While standing in a grassy area outside of his apartment building with his dog, Evans noticed a red Toyota Corolla parked directly outside the front door to the building. Evans observed that the Corolla appeared to be running and that both the driver's side and passenger's side windows were down. While still standing in the grassy area, Evans realized that he had left his cellular

---

[1] We held oral argument in the instant matter at Shelbyville High School on April 14, 2016. We wish to thank the faculty, students, and staff of Shelbyville High School for their hospitality. We also wish to commend counsel on the high quality of their arguments.

telephone ("cell phone") in his apartment and returned to his apartment to retrieve it.

[4] As he made his way back to his apartment, Evans, who was aware of recent break-ins in the apartment complex, saw a man exit the building. This man was subsequently identified as Cooper. Evans became suspicious because he did not recognize Cooper. After retrieving his cell phone, Evans decided to report the Corolla and suspicious man to leasing office. As Evans left his apartment, he encountered Cooper on a stairwell. Evans wrote down the license plate number on the Corolla as he made his way to the leasing office. Upon arriving at the leasing office, Evans reported the suspicious individual to the property manager, Katie Blackburn, and asked why an unknown individual was in his building.

[5] Blackburn and Joseph Bir, the maintenance supervisor, then went to Evans's building. As they approached the building, Bir noted the red Corolla. Once inside the apartment building, Bir heard a noise that seemed to come from the third floor. As Bir made his way to the third floor to investigate, Bir encountered Cooper and another man on the stairwell. Bir bumped shoulders and made eye contact with Cooper, who was carrying a laptop computer. Cooper and his companion then ran down the stairs.

[6] Upon arriving on the third floor, Bir observed that two of the doors had been opened and their frames had "pry bar marks" on them. Tr. p. 69. Bir yelled to Blackburn that there had been break-ins. Meanwhile, Evans, who was

watching the building from the apartment complex's clubhouse, observed Cooper and the other man exit the building carrying what appeared to be a flat screen television. Cooper and his companion then entered the Corolla and "sped off with the tires spinning." Tr. p. 40.

[7] Carmel Police Department ("CPD") Officer Robert Harris responded to a call reporting a "burglary in process" at the apartment complex. Tr. p. 86. Upon arriving at the complex, Officer Harris entered apartment 309, which was one of the apartments with signs of forced entry. This apartment belonged to Chad Bocock. Officer Harris observed that the apartment door had been forced open, drawers in the bedroom had been opened, a safe located in the bedroom closet had been forced open and its contents spilled onto the floor, and a laptop computer appeared to have been removed from a docking station in the spare bedroom. Upon returning to his apartment, Bocock confirmed that his laptop computer had been taken and indicated that he had not given anyone permission to enter his apartment, take his laptop computer, or open his drawers and safe.

[8] CPD Detective Brad Hendrick subsequently located the Corolla, which was registered to Hertz Avis Rental Company ("Hertz"), using the license plate number provided by Evans. CPD Officer Scott Pilkington processed the Corolla, which included taking DNA swabs from inside the vehicle. The DNA was later tested against an exemplar of Cooper's DNA. While the DNA comparison did not produce an exact match, it could not exclude Cooper as a contributor.

[9]     Shortly after initiating his investigation into the burglary, Detective Hendrick identified Cooper as a "person of interest." Tr. p. 177. Detective Hendrick then compiled a photograph array which was shown to both Evans and Bir, each of whom identified Cooper as one of the two men they had seen at the apartment complex. Also, while completing the investigation into the burglary, John Elliot, a CPD crime-scene examiner, came to believe that the door to apartment 309 appeared to have been forced open through use of a "wonder bar." Tr. p. 124. Elliot subsequently described the "wonder bar" as a common carpentry tool which is used to "pry with." Tr. p. 124.

[10]    On October 15, 2013, Appellee-Plaintiff the State of Indiana (the "State") charged Cooper with one count of Class B felony burglary and one count of Class D felony theft. The State also alleged that Cooper is a habitual offender. Cooper was tried before a jury on June 8 and 9, 2015.

[11]    Following the conclusion of Cooper's trial, the jury found Cooper guilty of Class B felony burglary and not guilty of Class D felony theft. Cooper subsequently admitted that he is a habitual offender. The trial court sentenced Cooper to a term of twenty years, with ten years executed in the Department of Correction ("DOC") and four years executed through the Hamilton County Community Corrections work release program. The remaining six years were suspended to probation. By virtue of Cooper's status as a habitual offender, the trial court enhanced the executed portion of Cooper's sentence by an additional ten years. This appeal follows.

# Discussion and Decision

On appeal, Cooper contends that the evidence is insufficient to sustain his conviction for Class B felony burglary.

## I. Standard of Review for Sufficiency Challenges

The Indiana Supreme Court has held that "[i]t is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). As such,

> [w]hen reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Wright v. State*, 828 N.E.2d 904, 905-06 (Ind. 2005). The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. *Rohr v. State*, 866 N.E.2d 242, 248 (Ind. 2007). "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004).

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (first set of brackets added, second set of brackets in original).

It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Drane*, 867 N.E.2d at 147. "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id*. "In

essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Further, a conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim. *Bailey*, 979 N.E.2d at 135 (citing *Ferrell v. State*, 565 N.E.2d 1070, 1072-73 (Ind. 1991)). The jury, acting as the trier-of-fact, is free to believe whomever it sees fit. *See Klaff v. State*, 884 N.E.2d 272, 274 (Ind. Ct. App. 2008).

## II.  Requirements to Prove Charge of Class B Felony Burglary

The version of Indiana Code section 35-43-2-1 in effect in September of 2013 provided that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony." However, the offense is a Class B felony if the building or structure is a dwelling. Ind. Code § 35-43-2-1. Therefore, in order to prove that Cooper committed Class B felony burglary, the State was required to prove that Cooper broke in and entered the dwelling of another with the intent to commit a felony therein.

## III.  Sufficiency of the Evidence to Sustain Cooper's Conviction for Class B Felony Burglary

In challenging the sufficiency of the evidence to sustain his conviction for Class B felony burglary, Cooper raises the following claims: (1) the evidence is

insufficient to prove that he participated in the burglary, and (2) that he acted with the requisite intent.

## A. Whether the Evidence is Sufficient to Prove that Cooper Participated in the Burglary

[17] In challenging the sufficiency of the evidence to prove that he participated in the burglary, Cooper argues that the evidence is insufficient to link him to the red Corolla and that there were "issues" with the witnesses' identification of him as one of the participants in the burglary.

### 1. The Corolla

[18] Cooper argues that without the Corolla, his conviction is supported only by the eyewitness identification of Cooper by two witnesses who "had never before seen" Cooper. Appellant's Br. p. 5. Cooper asserts that the evidence fails to link him to the Corolla "in a way that a reasonable trier of fact could conclude [that] he was guilty beyond a reasonable doubt." Appellant's Br. p. 6. We disagree.

[19] The record demonstrates the State presented evidence which linked Cooper to the Corolla. Both Evans and Bir provided the investigating officers with descriptions of the Corolla. In addition, both Evans and Bir identified Cooper as one of the men that they saw leave the apartment complex in the Corolla. Upon review, we conclude that the descriptions and identifications provided by Evans and Bir are sufficient to link Cooper to the Corolla. Cooper's assertion

to the contrary merely amounts to an invitation for this court to reweigh the evidence, which we will not do. *See Bailey*, 979 N.E.2d at 135.

### 2. Alleged Issues with Identification

[20] Cooper also argues that there were "issues" with Evans's and Bir's identifications of him as one of the participants in the burglary. In making this argument, Cooper points out that Bir did not recognize him as the suspect at trial. Cooper also asserts that Evans and Bir gave conflicting testimony as to whether the windows of the Corolla were fully or partially open and whether there was music coming from the Corolla. Cooper further asserts that because he was described as wearing a short-sleeved shirt on the day of the burglary, concealing the "wonder bar" in his shirt sleeve would not have been an option.

[21] Initially, we note that Cooper fails to explain how his alleged inability to hide the "wonder bar" in his shirt sleeve impacted Evans's and Bir's identification of him as one of the participants in the burglary. Further, while Evans and Bir may have had conflicting memories about whether the Corolla's windows were fully or partially open or whether there was music coming from the Corolla, both men identified Cooper from a photo array on the day after the burglary as one of the participants. Cooper does not challenge either of these identifications on appeal.

[22] The fact that Evans and Bir had conflicting memories relating to whether the windows were fully or partially open and whether music was playing in the Corolla approximately twenty-one months after the date that the burglary

occurred is of little consequence considering that both Evans and Bir unequivocally identified Cooper as one of the participants in the burglary the day after it occurred. Additionally, the fact that Bir did not recognize Cooper, whom he had never seen prior to the burglary, nearly two years after the commission of the burglary is also of little consequence given that Bir unequivocally identified Cooper as one of the participants in the burglary on the day after the burglary occurred.

[23] The jury, acting as the trier-of-fact, was in the best position to judge Evans's and Bir's credibility. Cooper's challenge on appeal is merely an invitation for this court to reassess Evans's and Bir's credibility and to reweigh the evidence, which, again, we will not do. *See Bailey*, 979 N.E.2d at 135.

## B. Whether the Evidence is Sufficient to Prove that Cooper Acted with the Requisite Intent

[24] Cooper also claims that the evidence is insufficient to prove that he entered Bocock's apartment with the intent to commit a felony therein. In raising this claim, Cooper points to the fact that he was found not guilty of the theft of Bocock's laptop computer. Cooper acknowledges, however, that "[t]he acquittal on the theft count, in and of itself, does not compel an answer to the sufficiency question either way" because "one can break and enter with the intent to commit a felony but not actually commit the felony and still be guilty of burglary." Appellant's Br. p. 7.

[25]   With regard to the requisite intent, the Indiana Supreme Court has held as follows:

> Burglars rarely announce their intentions at the moment of entry, and indeed many times there is no one around to hear them even if they were to do so. Hence, a burglar's intent to commit a specific felony at the time of the breaking and entering may be inferred from the circumstances. Circumstantial evidence alone is sufficient to sustain a burglary conviction.
>
> Evidence of intent need not be insurmountable, but there must be a specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent to commit a felony. The evidentiary inference pointing to the defendant's intent must be separate from the inference of the defendant's breaking and entering. The inference of intent must not derive from or be supported by the inference of breaking and entering. In other words, the evidence must support each inference—felonious intent and breaking and entering—independently, and neither inference should rely on the other for support. This is not to say, however, that the same piece of evidence cannot support both inferences.
>
> Requiring independent evidence of intent is necessary to maintain the distinction between burglary and other criminal offenses involving property invasion such as criminal trespass or residential entry. Permitting the felonious intent element to be inferred from the inference of breaking and entering would render the intent element meaningless and read it out of the statute.

*Baker*, 968 N.E.2d at 229-30 (internal quotations and citations omitted).

[26]   In *Baker*, the defendant was charged with Class B felony burglary after he broke into a church and, while inside the church, opened several cupboards and

drawers. *Id*. at 228, 231. Upon review, the Indiana Supreme Court held that evidence demonstrating that defendant had opened several cupboards and drawers, standing alone, permitted a reasonable inference of the defendant's felonious intent at the time of entry. *Id*. at 231. In reaching this holding, the Indiana Supreme Court explained that:

> Looking through the kitchen cupboards and drawers was not a necessary step in the act of breaking and entering the church. It was an additional act, separate and distinct from the breaking and entering, in which the defendant chose to engage. The opening of cabinets and drawers by an intruder suggests, among other things, that the person opening them was looking for something to take. From this, the jury reasonably could have concluded that the defendant broke and entered the church with an intent to commit theft.

*Id*.

[27]     The facts presented in the instant matter support the reasonable inference that Cooper broke in and entered Bocock's apartment with the intent to commit a felony, *i.e.*, theft, therein. Again, upon entering Bocock's apartment, Officer Harris observed that the apartment door had been forced open, that drawers in the bedroom had been opened, that a safe located in the bedroom closet had been forced open and its contents spilled onto the floor, and that a laptop computer appeared to have been removed from a docking station in the spare bedroom. Further, upon returning to his apartment, Bocock confirmed that his laptop computer had been taken and indicated that he had not given anyone

permission to enter his apartment, take his laptop computer, or open his drawers and safe.

[28] We find the facts presented in the instant matter to be similar to those presented in *Baker*. As such, in light of the Indiana Supreme Court's holding in *Baker*, we conclude that Cooper's act of looking through Bocock's drawers, forcing open Bocock's safe, and removing Bocock's laptop computer from its docking station constituted additional acts that were separate and distinct from the breaking and entering from which the jury could reasonably infer an intent to commit theft.

# Conclusion

[29] The evidence is sufficient to sustain Cooper's conviction for Class B felony burglary. As such, we affirm the judgment of the trial court.

[30] The judgment of the trial court is affirmed.

Baker, J., and Bailey, J., concur.